# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX GOMEZ,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:20-cv-01595-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION TO COMMISSIONER FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 17, 18, 22) |

**I.**

**INTRODUCTION**

Plaintiff Felix Gomez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Social Security Income (SSI) benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1] For the reasons set forth below, Plaintiff's appeal shall be granted, and the action shall be remanded to the Commissioner for further

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (ECF Nos. 7, 9, 10.)

proceedings.

## II.

## BACKGROUND[2]

On February 21, 2018, Plaintiff filed an application for SSI under Title XVI, alleging disability beginning August 14, 2000. (Admin. Rec. ("AR") 185–189, ECF No. 12-1.) Plaintiff's claim was initially denied on April 11, 2018, and denied upon reconsideration on July 27, 2018. (AR 80, 100.) On May 13, 2020, Plaintiff appeared before Administrative Law Judge Lynn Ginsberg (the "ALJ"), by telephone, for an administrative hearing. (AR 19.) On June 5, 2020, the ALJ issued a decision denying benefits. (AR 16–33.) On September 8, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1–6.)

Plaintiff initiated this action in federal court on November 12, 2020, and seeks judicial review of the denial of his application for disability benefits under Title XVI. (ECF No. 1.) The Commissioner lodged the administrative record on May 28, 2021. (ECF No. 12.) On September 29, 2021, Plaintiff filed an opening brief. (ECF No. 17.) On November 8, 2021, Defendant filed a brief in opposition. (ECF No. 18.) On November 29, 2021, Plaintiff filed a reply. (ECF No. 22.)

## III.

## LEGAL STANDARD

**A.    The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination. However, the Court will refer to the parties' briefings by their ECF pagination.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal

decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a vocational expert ("VE"). See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B.   Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v.

CalPortland Co., 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

While the ALJ considered both physical and mental impairments in her disability determination, Plaintiff's appeal focuses only on the mental impairments. Plaintiff raises the following issues on appeal: (1) the ALJ erred by failing to develop the record regarding Plaintiff's diagnosis of neurocognitive disorder due to congenital hydrocephalus; (2) the ALJ erred in discounting Dr. Ekram Michiel's consultative psychiatric opinion; and (3) the ALJ erred in the RFC determination because she failed to consider Plaintiff's diagnosed obsessive-compulsive disorder.[4] (ECF No. 17 at 18–24.) The Court addresses each argument in turn.

### A.   The ALJ's Decision

The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 21–28.) At step one, the ALJ found the claimant had not engaged in substantial gainful activity since February 21, 2018, the application date. (AR 21.) At step two, the ALJ

---

[4] As Defendant correctly observes, Plaintiff does not raise any issues with respect to the ALJ's discounting of Plaintiff's testimony, nor does Plaintiff contest the ALJ's determination as it related to Plaintiff's physical impairments. Accordingly, the Court only considers the issues presently before it, and any issues not raised on appeal are deemed waived. Lewis, 236 F.3d at 517 n.13.

5

found Plaintiff had the severe impairments of bilateral hearing loss; right eye strabismus and diplopia; depression; anxiety; developmental speech disorder; hiatal hernia; hypertension; and scoliosis of the thoracolumbar spine with chronic back pain. (AR 21 (citing 20 C.F.R. § 416.920(c)).) The ALJ additionally found Plaintiff had the medically determinable impairments of obesity and a history of hydrocephalus with shunt placement, but determined these were nonsevere impairments. (AR 21.) Finally, Plaintiff was diagnosed with a neurocognitive disorder during his June 2018 consultative psychiatric evaluation with Dr. Michiel, but the ALJ determined the purported neurocognitive disorder was not an established medically-determinable impairment because the diagnosis was inconsistent with Plaintiff's actual functioning and lacked evidence from an "acceptable medical source in order to establish [its] existence." (AR 21–22 (citing 20 C.F.R. §§ 404.1513(a), 416.913(a); SSR 06-03p).) In supporting her determination regarding Plaintiff's impairments, the ALJ found the opinion of Dr. Macnamara was persuasive, the opinion of Dr. Damania was mostly persuasive, and the opinions of Drs. Lowe, Frye, Harper, and Michiel were unpersuasive. (AR 21, 26–27.)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. (AR 22.) In evaluating Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ determined Plaintiff only had moderate limitations with respect to the criteria, including the category of "concentrating, persisting or maintaining pace." (AR 22–23.)

Before proceeding to step four, the ALJ determined Plaintiff's RFC permitted him to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following limitations:

> [Plaintiff] can lift/carry no more than 100 pounds occasionally and 50 pounds frequently. He can never climb ladders, ropes, or scaffolds. He can have no use of moving, hazardous machinery and cannot have any exposure to unprotected heights. He cannot work at an active construction site. [Plaintiff] can work in a work environment with a moderate noise level. He can perform jobs that do not require fine hearing. [Plaintiff] can understand, remember, and carry out simple instructions that can be learned in up to and including 30 days of on-the-job training. He can keep a sufficient pace to complete tasks and meet quotas typically found in unskilled work but is limited to generally goal-oriented work that is not time-

6

> sensitive, strict, production-quota work. He cannot perform conveyor belt work. [Plaintiff] can have superficial, non-direct interaction with the public and can have occasional interaction with coworkers and supervisors. [Plaintiff] can adapt to occasional changes in the workplace.

(AR 23.)

At step four, the ALJ found Plaintiff had no past relevant work. (AR 27.) At step five, the ALJ determined Plaintiff could perform jobs existing in significant numbers in the national economy, specifically the jobs of laundry worker, prep cook, and mail room clerk. (AR 27–28.) Therefore, the ALJ found Plaintiff was not under a disability at any time since February 21, 2018. (AR 28.)

**B.     Whether the ALJ Erred by Failing to Develop the Record**

At its core, the issue in this case is one of an ALJ's duty to supplement the record when evidence suggests a mental impairment that goes unresolved. Plaintiff's first argument is that the ALJ failed to develop the record regarding Plaintiff's neurocognitive disorder diagnosis. (ECF No. 17 at 19–20.) Plaintiff's third argument — that the ALJ failed to consider Plaintiff's diagnosed obsessive compulsive disorder ("OCD") — is also, in part, a failure to develop the record argument and will therefore be addressed concurrently here.

1.     <u>Legal Standard</u>

"The claimant has the burden of proving that she is disabled." <u>Smolen</u>, 80 F.3d at 1288. However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" <u>Celaya v. Halter</u>, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983)). "Social Security proceedings are inquisitorial rather than adversarial." <u>Schiaffino v. Saul</u>, 799 Fed. App'x 473, 476 (9th Cir. 2020) (quoting <u>Sims v. Apfel</u>, 530 U.S. 103, 111–12 (2000)). The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect his own interests. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing <u>Higbee v. Sullivan</u>, 975 F.2d 558, 562 (9th Cir. 1992)).

> The ALJ is not a mere umpire at such a proceeding, but has an

7

> independent duty to fully develop the record . . . it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.

Celaya, 332 F.3d at 1183 (quoting Higbee, 975 F.2d at 561).

In Celaya v. Halter, for example, the claimant, proceeding *pro se*, claimed disability based on her diabetes and hypertension. Celaya, 332 F.3d at 1182. The claimant also implicitly raised obesity in her report of symptoms, but because her obesity was not quite sufficient to meet the listing criterion, and because she did not expressly raise her obesity as a disabling factor, the ALJ declined to consider the claimant's obesity in the multiple impairment analysis and ultimately found her not disabled. Id. On appeal, the Ninth Circuit found the ALJ erred in failing to consider the claimant's obesity in the step-three multiple impairment analysis. Id. at 1182–83. Citing the ALJ's duty to develop the record, the court found the ALJ's failure to develop the record further with respect to the claimant's obesity constituted reversible error. Further, because the ALJ's RFC determination was based on a multiple impairment analysis that did not contemplate the effects of the claimant's obesity, the Ninth Circuit found the RFC determination and subsequent finding that the claimant could perform certain existing jobs were not based on substantial evidence that took the totality of the claimant's medical condition into account and were therefore made in error. Id. at 1130–84.

The Ninth Circuit has explained that ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.")). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150 (citations omitted). The regulations, similarly, provide the ALJ may order further consultative examination to "resolve an

inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision." See 20 C.F.R. § 416.919a. Examples of situations under which further developing the record may be required include when the additional evidence needed is not contained in the records of the claimant's medical sources, and when highly technical or specialized medical evidence not available from the claimant's medical sources is needed. 20 C.F.R. § 416.919a(b). Once the duty to further develop the record is triggered, failure to do so constitutes reversible error. See Tonapetyan, 242 F.3d at 1150–51.

In Tonapetyan, one of the claimant's psychiatrists diagnosed her with schizophrenia. Tonapetyan, 242 F.3d at 1150. A psychological consultant diagnosed the claimant with mild depression, but was equivocal about whether she also had schizophrenia. Id. The ALJ rejected the psychiatrist's diagnosis as unsupported by the record, and relied upon the consultant's opinion in disregarding the claimant's claim of schizophrenia. Id. The Ninth Circuit reversed, holding the evidence of the claimant's schizophrenia triggered the ALJ's duty to supplement the record. Id.; see also Garcia v. Comm'r, 768 F.3d 925 (9th Cir. 2014) (where the ALJ relied upon medical records, including partial IQ scores, in assessing the claimant's mental impairments, the ALJ failed in his duty to supplement where a "fully and fairly developed record [would] include a complete set of IQ scores that report verbal, non-verbal, and full-scale abilities."); Smolen, 80 F.3d at 1288 (where a physician indicated a claimant's condition could have a material impact on the disability decision, the court ordered remand for the ALJ to further investigate).

2.     Analysis

a.     **Neurocognitive Disorder Diagnosis**

Specifically regarding Dr. Michiel's diagnosis of neurocognitive disorder, the ALJ rejected Dr. Michiel's diagnosis of neurocognitive disorder because (1) "Dr. Michiel only administered a mental status evaluation and no other testing," (2) Plaintiff "has not received any treatment for this impairment," and (3) there is no "evidence from an 'acceptable medical source'" to "establish [Plaintiff's purported] neurocognitive disorder as a medically-determinable impairment." (AR 21–22, 26.) The ALJ does not indicate the diagnosis was contradicted by any of the medical evidence or rejected by another physician.

9

With respect to the first reason, Plaintiff argues the fact that the ALJ noted Dr. Michiel "only administered a mental status evaluation and no other testing" demonstrates the ALJ believed further testing was required to evaluate the neurocognitive disorder diagnosis (though the ALJ does not identify what test or tests were missing). Defendant, moreover, argues Dr. Michiel should have conducted a Montreal Cognitive Assessment.[5] (ECF No. 18 at 13.) Plaintiff argues these acknowledgments that additional testing was required — in the ALJ's mind, at least — to facilitate a determination of whether Plaintiff had a neurocognitive disorder demonstrates the ALJ should have developed the record further. The Court tends to agree. The fact that the ALJ indicated additional tests should have been performed and Defendant identified an actual test that *could* have been performed suggests the record was incomplete and therefore "ambiguous" with respect to the neurocognitive disorder diagnosis, thus triggering the ALJ's duty to further develop the record. Tonapetyan, 242 F.3d at 1150; see also Schiaffino, 799 Fed. App'x at 475–76 (ALJ dismissing ambiguous opinion instead of further developing the record was reversible error where ALJ's analysis might have changed if the doctor was given the opportunity to clarify her opinion). Moreover, rather than outright rejecting Dr. Michiel's diagnosis on this basis, the ALJ could have developed the record simply by subpoenaing Dr. Michiel, submitting further questions to him, or permitting supplementation of the record. Smolen, 80 F.3d at 1288.

Plaintiff also disputes the ALJ's second reason, that no treatment was provided for the neurocognitive disorder. Plaintiff argues this statement is contradicted by the evidence that Plaintiff was placed in special education classes in high school and participated in a counseling program with Licensed Clinical Social Workers ("LCSW") Chrystal Hedlin and Maria Becerra, who both assessed Plaintiff with a development disorder. (AR 392, 397, 414–15, 417.) The ALJ does not appear to have addressed or considered this evidence at all. Yet, the reason Plaintiff argues this evidence is relevant to Dr. Michiel's diagnosis is because of the relationship between congenital hydrocephalus (an impairment the ALJ did recognize) and neurocognitive disorders;

---

[5] Defendant additionally argues Dr. Michiel should have also conducted a "mini mental state examination," but does not explain the distinction or relevance of performing a "mini" mental state examination where Dr. Michiel already performed a mental status examination. (See AR 295–96 (discussing results under heading of "mental status examination").)

specifically, that hydrocephalus "can permanently damage the brain, causing problems with physical and mental development." (ECF No. 17 at 19 n.9 (citing National Library of Medicine, https://medlineplus.gov/hydrocephalus.html); see also ECF No. 22 at 2 n.1 ("Neurocognitive disorder is a general terms that describes decreased mental function due to a medical disease other than a psychiatric illness.").) At this point, the Court finds it relevant to note that, while the ALJ referred to Dr. Michiel's diagnosis in truncated fashion as "neurocognitive disorder," Dr. Michiel's express full diagnosis of Plaintiff is "neurocognitive disorder due to another medical condition, hydrocephalus." (AR 296.) Plaintiff proffers the ALJ did not consider his developmental accommodations in connection with the neurocognitive disorder diagnosis due to a lack of understanding of the connection between congenital hydrocephalus and neurocognitive disorders. The Court need not reach this conclusion. It is sufficient to note the ALJ's statement that Plaintiff received no treatment related to this condition appears to be belied by the record, that the ALJ outright rejected Dr. Michiel's diagnosis without considering additional tests that she stated were necessary for consideration of the diagnosis, and that the record consequently remains ambiguous with respect to the diagnosis.

The ALJ's third reason for rejecting the diagnosis is somewhat ambiguous. Defendant interprets the ALJ's comment that there was "no "evidence from an 'acceptable medical source' " as a more general reference to the record on whole, asserting the ALJ was stating no objective medical evidence in the record supported Dr. Michiel's diagnosis. Plaintiff, on the other hand, interpreted the ALJ's statement to be a reference to Dr. Michiel himself, indicating that Dr. Michiel is not an "acceptable medical source" for purposes of making a neurocognitive disorder diagnosis but rather, a specialist such as a neurologist must be utilized. If the first interpretation is accurate, the Court finds the ALJ's reason conflicts with the evidence of special education accommodations Plaintiff required and his ongoing treatment related to his developmental disability. Or, alternatively, that Dr. Michiel, who constitutes an "acceptable medical source" provided observations of Plaintiff in his medical notes that support his diagnosis. If the latter interpretation is more appropriate, the Court would agree with Plaintiff, again, that the duty to further develop the record and seek a consultative examination by a neurologist was triggered.

In any event, the lack of explanation or clarity in the ALJ's rejection of Dr. Michiel's diagnosis indicates further development of the record was required. A further consequence of rejecting the neurocognitive disorder diagnosis without developing the record is that the ALJ did not consider a neurocognitive disorder in his multiple factors analysis, and it is possible the remaining steps of the ALJ's disability analysis would also be affected. See Celaya, 332 F.3d at 1181–82. "In cases where an ALJ fails to develop the record, courts 'cannot conclude that the ALJ's decision was based on substantial evidence . . . [when taking] the totality of [the claimant's] mental condition into account.' " Alderson v. Saul, 859 Fed. App'x 25, 27 (9th Cir. 2021) (mem.) (quoting Celaya, 332 F.3d at 1184 (alterations in original)). For these reasons, remand is warranted. Tonapetyan, 242 F.3d at 1150–51.

### b. Obsessive Compulsive Disorder

Plaintiff additionally argues the ALJ erred in the RFC determination because she failed to consider Plaintiff's diagnosed obsessive-compulsive disorder. (ECF No. 17 at 22–23.) Defendant argues Plaintiff's OCD symptoms were largely or solely supported by his subjective testimony and were therefore properly discounted by the ALJ. (ECF No. 18 at 14–15.) But a review of the ALJ's decision reflects that the ALJ never discussed or appears to contemplate Plaintiff's OCD condition at all.[6] In this situation, the Court finds Plaintiff's argument sounds in both a failure to develop the record as well as a faulty RFC determination.

Plaintiff reported symptoms associated with his OCD to medical providers, who also diagnosed Plaintiff with OCD, "mixed obsessional thoughts and acts." (See AR 395, 397, 410, 414–15, 424, 427.) Symptoms include that Plaintiff isolates himself five times a week, feels like bugs are crawling on his face, washes his hands at least fifteen to a hundred times per day, to the point that they get cuts on them and become dry or burn, must put things in the same order, and "freaks out" if he "loses things." As noted, the ALJ found a number of Plaintiff's conditions

---

[6] At most, the ALJ's decision refers to Plaintiff's "depression and anxiety symptoms . . . including feeling down, feeling anxious, and worrying." (AR 25.) However, Plaintiff argues, and this Court agrees, an obsessive-compulsive disorder is distinct from depression and anxiety, and it presents different functional limitations. (See ECF No. 17 at 23 n.10 (citing https://medlineplus.gov/obsessivecompulsivedisorder.html) ("Obsessive-compulsive disorder (OCD) is a mental disorder in which you have thoughts (obsessions) and rituals (compulsions) over and over. They interfere with your life, but you cannot control or stop them.")).)

constituted severe impairments; Plaintiff's obesity and history of hydrocephalus with shunt replacement constituted non-severe impairments, and the ALJ rejected Dr. Michiel's diagnosis of neurocognitive disorder as being any kind of impairment whatsoever. Yet, even though the diagnoses by Plaintiff's medical providers constitute evidence in the record of potential mental-health issues, the ALJ does not — as she did with Dr. Michiel's diagnosis — address Plaintiff's diagnosis of OCD, either to find the existence of a medically determinable impairment or to reject the diagnosis. Similarly, while the ALJ discounts Plaintiff's testimony with respect to his difficulty with concentration, depression, and anxiety symptoms (AR 25), the ALJ does not mention Plaintiff's OCD and related symptoms, indicate that she is discounting the medical records documenting that condition, or provide any reasons — let alone clear and convincing ones — for rejecting Plaintiff's OCD as a medically-determinable impairment.[7] This demonstrates a failure to properly develop the record.

Furthermore, "an RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r. of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009); Martin v. Comm'r of Soc. Sec. Admin., 472 Fed. App'x 580 (9th Cir. 2012) (unpublished) ("The [ALJ] erred when formulating [the claimant's RFC] because the RFC neither incorporated Dr. Steiner's opinion of [the claimant's] work limitations nor gave specific and legitimate reasons for rejecting it."; and finding VE's testimony based on flawed RFC had no evidentiary value). Here, the ALJ's opinion is unclear as to whether she accounted for Plaintiff's OCD in her mental RFC finding. Although the ALJ is entitled to reject limitations that are unsupported by the record, she must provide the reasons for discounting that evidence. Because of the above deficiencies in the ALJ's

---

[7] Objective medical evidence is a relevant factor the ALJ may consider when evaluating symptom testimony, but an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate his alleged symptoms. See Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Furthermore, if an ALJ discounts symptom testimony, he must provide "specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted). "This requires the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." Id. (citations and internal quotations omitted). With respect to the instant case, the Court acknowledges Plaintiff does not challenge the ALJ's discounting of his own testimony and that specific issue is therefore not before the Court. Lewis, 236 F.3d at 517 n.13. However, Plaintiff did not need to object to the ALJ's improper discounting of his OCD symptom testimony because there was no basis to do so — as no addressing, discussing, or discounting of such testimony exists in the decision; indeed, nothing in the ALJ's decision indicates she considered and/or rejected Plaintiff's OCD in any manner whatsoever.

explanation, the Court is unable to determine whether any rejection of potentially pertinent, relevant evidence was proper.[8]

In sum, the Court cannot conclude that the ALJ's decision was based on substantial evidence taking the totality of Plaintiff's impairments into account. See Alderson, 859 Fed. App'x at 27; Celaya, 332 F.3d at 1184. On this basis, the ALJ's failure to further develop the record was not harmless. Accordingly, remand is warranted.[9]

**C.    Remand**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (citing INS v. Ventura, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose

---

[8] On remand, the ALJ must clarify her findings with respect to any limitations relating to Plaintiff's OCD and explain how, if at all, her RFC finding accounts for such limitations. If the ALJ concludes that Plaintiff's OCD does not limit his ability to work, she must explain and support the reasons for that conclusion.

[9] Based on this conclusion, the Court need not address Plaintiff's additional arguments. Nonetheless, the Court notes that the ALJ likewise fails to discuss Plaintiff's OCD in her analysis of the opinions of Drs. Michiel and Macnamara. Furthermore, the Court notes the ALJ does not consider Plaintiff's prior special education accommodations relative to his ability to ultimately obtain a two-year associate degree in her discussion of Plaintiff's RFC. Nor does the ALJ explain how the ADLs identified in her RFC discussion show "capacities that are transferrable to a work setting, or are otherwise inconsistent with Plaintiff's alleged social and mental capacity limitations. See Schiaffino, 799 Fed. App'x at 476–77 (solitary ADLs are not inconsistent with alleged social limitations); see also Zeitler v. Berryhill, No. 5:16-cv-00862-EJD, 2017 WL 4150978, at *6 (N.D. Cal. Sept. 19, 2017) (ADLs including reading and playing online games, without specific details about the frequency and extent of the activities, did not constitute substantial evidence inconsistent with physician opinions of claimant's limitations). Finally, the ALJ is reminded that the Ninth Circuit has commented "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Schiaffino, 799 Fed. App'x at 476 (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)) (rejecting ALJ's decision that claimant's medical record was "inconsistent with disabling mental health limitations" of PTSD, OCD and anxiety because the claimant "has had no significant therapy or counseling since May 2013," was never "hospitalized due to mental disorders," and did not go to his psychiatrist often enough). On remand, the ALJ should clarify how Plaintiff's OCD and other purported limitations were considered in according weight to the opinions of his mental health physicians and determining Plaintiff's RFC.

would be served by further administrative proceedings, or where the record is fully developed. Varney v. Sec'y of Health & Human Serv., 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, an award of benefits by this Court is not appropriate, because the record is not "free of conflicts, ambiguities, or gaps." Leon v. Berryhill, 880 F.3d 1041, 1047 (9th Cir. 2017). The ALJ rejected Dr. Michiel's diagnosis of neurocognitive disorder without considering additional tests that she deemed necessary for consideration of the diagnosis, and she failed to discuss Plaintiff's OCD diagnosis or consider the impact of Plaintiff's OCD symptoms on his ability to work. Determination of these issues could impact other aspects of the ALJ's decision, such as evaluation of the other medical opinions, determination of the severity of all of Plaintiff's impairments and the combination thereof, the determination of Plaintiff's RFC, and consequently the ultimate determination of whether Plaintiff is able to perform work in the national economy. Therefore, the matter shall be remanded for the ALJ to re-evaluate the entirety of the medical evidence, fully develop the record regarding Plaintiff's physical impairments, and identify legally sufficient grounds to support her decision.

## V.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 17) is GRANTED;
2. The matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Felix Gomez and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **June 3, 2022**

UNITED STATES MAGISTRATE JUDGE